UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-8869 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| VEONEER, INC., JAN CARLSON, ROBERT | : **SECTIONS 14(a) AND 20(a) OF THE** |
| W. ALSPAUGH, MARY LOUISE | : **SECURITIES EXCHANGE ACT OF** |
| CUMMINGS, MARK DURCAN, JAMES M. | : **1934** |
| RINGLER, KAZUHIKO SAKAMOTO, | : |
| JONAS SYNNERGREN, and WOLFGANG | : **JURY TRIAL DEMANDED** |
| ZIEBART, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Veoneer, Inc. ("Veoneer or the "Company") and the members Veoneer board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Veoneer by Qualcomm Incorporated ("Qualcomm") and its affiliates and affiliates of SSW Investors LP ("SSW Investors").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on October 25, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby SSW Merger Sub Corp ("Merger Sub"), a direct wholly owned subsidiary of SSW Holdco LP, which in turn is a subsidiary of SSW Investors, will merge with and into Veoneer with Veoneer surviving the merger and becoming an direct, wholly owned subsidiary of Qualcomm (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Veoneer common share issued and outstanding will be converted into the right to receive $37.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Veoneer stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Rothschild & Co. ("Rothschild") and Morgan Stanley & Co. LLC ("Morgan Stanley") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Veoneer stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place in this District, SSW Holdco, Merger Sub, and SSW Investors are headquartered in this District, and Georgeson LLC, the Company's proxy solicitor, is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Veoneer common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Jan Carlson has served as a member of the Board since 2018 and is the Company's Chairman, President, and Chief Executive Officer.

11. Individual Defendant Robert W. Alspaugh has served as a member of the Board since 2018.

12. Individual Defendant Mary Louise Cummings has served as a member of the Board since 2018.

13. Individual Defendant Mark Durcan has served as a member of the Board since 2018.

14. Individual Defendant James M. Ringler has served as a member of the Board since 2018.

15. Individual Defendant Kazuhiko Sakamoto has served as a member of the Board since 2018.

16. Individual Defendant Jonas Synnergren has served as a member of the Board since 2018.

17. Individual Defendant Wolfgang Ziebart has served as a member of the Board since 2018.

18. Defendant Veoneer is incorporated in Delaware and maintains its principal offices at Klarabergsviadukten 70, Section C, 6th floor, Stockholm, Sweden SE-111 64. The Company's common stock trades on the New York Stock Exchange under the symbol "VNE."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.     The Proposed Transaction**

21. Veoneer engages in the design, development, manufacture, and sale of automotive safety electronics primarily in North America, Europe, and Asia. It offers automotive radars, mono-and stereo-vision cameras, night driving assist systems, advanced driver assist systems (ADAS), electronic control units, airbag control units, crash sensors, seat belt pre-tensioner electronic controllers, and ADAS software for highly automated driving (HAD) and autonomous

driving (AD). The company also provides driver monitoring systems, LiDAR sensors, RoadScape positioning, and other technologies critical for ADAS, HAD, and AD solutions. Veoneer, Inc. was incorporated in 2017 and is headquartered in Stockholm, Sweden.

22.    On October 4, 2021, Veoneer and Qualcomm jointly announced that they had entered into a proposed transaction:

> Qualcomm Incorporated (NASDAQ: QCOM) and SSW Partners, a New York-based investment partnership ("SSW Partners"), today announced they have reached a definitive agreement to acquire Veoneer, Inc. (NYSE: VNE; SSE: VNE SDB) for $37.00 per share in an all-cash transaction, representing a total equity value for Veoneer of $4.5 billion. Veoneer has terminated its prior acquisition agreement with Magna International Inc. ("Magna") and canceled its October 19, 2021, special meeting that was previously scheduled to approve that agreement.
>
> At closing, SSW Partners will acquire all of the outstanding capital stock of Veoneer, shortly after which it will sell the Arriver business to Qualcomm and retain Veoneer's Tier-1 supplier businesses. SSW Partners will lead the process of finding strong, long-term strategic partners. This transaction structure facilitates the long-term success of all Veoneer's businesses.
>
> Having already demonstrated a successful partnership with Arriver, Qualcomm believes that the Arriver business will thrive at Qualcomm. Upon close of the transactions, Qualcomm will incorporate Arriver's Computer Vision, Drive Policy and Driver Assistance assets into its leading Snapdragon Ride™ Advanced Driver Assistance Systems (ADAS) solution. This will augment Qualcomm's ability to deliver an open and competitive ADAS platform for automakers and Tier-1s at scale.
>
> SSW Partners will work with Veoneer's management to ensure the pursuit of Veoneer's existing business plan and to identify strong, long-term strategic partners for the Restraint Control Systems (RCS) and Active Safety businesses. The principals of SSW Partners have substantial investing, operating and transaction experience internationally, as well as a track record of success in collaborating with management teams in multiple geographies and industries. They are experienced investors and advisors in both Europe and the automotive sector and will prioritize the smooth continuation of business activities for the customers and employees of the RCS and Active Safety businesses. SSW Partners' investment in Veoneer will represent its first capital commitment as a partnership since its founding at the beginning of the year.
>
> "Qualcomm is the natural owner of Arriver. By integrating these assets, Qualcomm accelerates its ability to deliver a leading and horizontal ADAS solution as part of its digital chassis platform," said Cristiano Amon, president

and CEO of Qualcomm Incorporated. "We believe that this transaction and structure benefits both Qualcomm's and Veoneer's shareholders, positions all of Veoneer's businesses for success and provides a compelling opportunity to customers and employees."

"This transaction creates superior value for our shareholders," said Jan Carlson, Chairman, President and CEO of Veoneer. "It also provides attractive opportunities to our Arriver team at Qualcomm and allows our other businesses to find long-term industrial partners where they can continue to develop."

Mr. Carlson continued, "Our board and management team remain focused on delivering on our objectives, driving continuous improvements across the organization and launching new technologies and programs for our customers. Despite significant industry-wide challenges, our team has done an outstanding job positioning Veoneer for success, building on our leading ecosystem of partners, cutting-edge technology and a strong order book."

"We are excited to partner with Qualcomm to acquire Veoneer," said Antonio Weiss and Josh Steiner of SSW Partners. "While Qualcomm focuses on the Arriver business, we will focus on finding strong, long-term strategic homes for the rest of Veoneer's businesses – we are committed to ensuring that Veoneer's employees prosper, the businesses continue to innovate and grow and customers continue to have uninterrupted access to the outstanding service and quality for which Veoneer is known. We have high regard for Veoneer's management team and look forward to partnering with them to ensure a successful outcome for all stakeholders."

**Transaction Details**

The cash purchase price of $37.00 per share represents an 18% premium to Veoneer's prior agreement with Magna, and an 86% premium to the unaffected share price prior to the announcement of the Magna agreement. The transaction has been approved by the boards of directors of Qualcomm and Veoneer and is subject to approval under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 in the United States, certain European foreign direct investment approvals, approval by Veoneer stockholders and other customary conditions. The transaction is expected to close in 2022.

The announcement follows the Veoneer board's determination, with the assistance of its financial and legal advisors, that a formal acquisition offer Veoneer received from Qualcomm and SSW Partners on October 1, 2021 constitutes a "Superior Proposal" under the terms of Veoneer's merger agreement with Magna dated July 22, 2021. Magna has waived its right to submit a revised proposal to Veoneer.

Centerview Partners LLC and Evercore Group L.L.C. acted as financial advisors to Qualcomm and Paul, Weiss, Rifkind, Wharton & Garrison LLP acted as legal

counsel. Davis Polk & Wardwell acted as legal counsel to SSW Partners. Morgan Stanley and Rothschild & Co. acted as financial advisors to Veoneer, and Skadden, Arps, Slate, Meagher & Flom LLP acted as legal counsel.

\* \* \*

23. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Veoneer's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**    **The Materially Incomplete and Misleading Proxy Statement**

24. On October 25, 2021, Veoneer filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Veoneer's Financial Projections*

25. The Proxy Statement fails to provide material information concerning financial projections by Veoneer management and relied upon by the financial advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts

(the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Veoneer management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated.

>Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning the Financial Advisors' Financial Analyses*

30. With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Morgan Stanley in the analysis.

31. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 1.5% to 2.5%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 10.4% to 11.9%; (iv) the Company's total debt including financial leases, plus tax-effected pension liability, cash and cash equivalent and investments; (v) the number of outstanding Company common stock on a fully diluted basis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. With respect to Morgan Stanley's *Precedent Transactions Multiples Analysis*, the Proxy Statement also fails to disclose: (i) the individual metrics for the transactions observed by Morgan Stanley in the analysis.

33. With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets*, the Proxy Statement fails to disclose the equity research analysts observed and the corresponding future price targets published by each analyst.

34. With respect to Rothchild's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the individual metrics of each company observed by Rothschild.

35. With respect to Rothschild's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual metrics of each transaction observed by Rothschild.

36. With respect to Rothschild's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the terminal value for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 1.5% to 2.5%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 10.5% to 12.5%; (iv) the line items used to calculate the Company's estimated unlevered free cash flow, including NOPAT; (v) the net debt of the Company as of June 30, 2021; and (vi) the number of fully diluted outstanding shares of Veoneer common stock.

37. With respect to Rothschild's selected equity analyst per share target prices analysis, the Proxy Statement fails to disclose the equity research analysts observed and the corresponding price targets published by each analyst.

38. With respect to Rothschild's premiums paid analysis, the Proxy Statement fails to disclose: (i) the premiums paid in the precedent transactions observed; and (ii) the precedent transactions observed by Rothschild.

39. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Morgan Stanley and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

45. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Veoneer within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Veoneer, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Veoneer, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Veoneer, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: October 29, 2021   **MELWANI & CHAN LLP**

By:  /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*

15